**RECORD NOS. 14-2239(L); 14-2248**

In The

# United States Court Of Appeals
## For The Fourth Circuit

**RICHARD BELL, husband; JACQUELINE BELL, wife; DELBERT C. BELL; ARNOLD BOLYARD, husband; SARAH BOLYARD, wife; DARLENE BOLYARD; LINDA M. KING KNOTTS; WANDA J. KING-LIFE,**

*Plaintiffs - Appellants,*

v.

**MAGNUM LAND SERVICES, LLC, a Michigan limited liability company; BELMONT RESOURCES, LLC, a Michigan limited liability company; ENERPLUS RESOURCES (USA) CORPORATION, a Delaware corporation,**

*Defendants – Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT CLARKSBURG

_____

**BRIEF OF APPELLANTS**

_____

**Jeffrey J. Rokisky**
**Ryan C. Rokisky**
**ROKISKY AND ASSOCIATES**
**3200 Main Street**
**Weirton, WV 26062**
**(304) 748-3200**

*Counsel for Appellants*

**Daniel L. McCune**
**SELLITTI, NOGAY**
**  & MCCUNE, PLLC**
**P. O. Box 3095**
**Weirton, WV 26062**
**(304) 723-1400**

*Counsel for Appellants*

**William J. Leon, Jr.**
**WILLIAM J. LEON, L.C.**
**1200 Dorsey Avenue, Suite III**
**Morgantown, WV 26501**
**(304) 554-3880**

*Counsel for Appellants*

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street ♦ Suite 230 ♦ Richmond, VA 23219
804-249-7770 ♦ www.gibsonmoore.net

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 14-2239        Caption: Richard Bell et. al. v. Magnum Land Services,LLC

Pursuant to FRAP 26.1 and Local Rule 26.1,

Richard Bell et. al.
_____
(name of party/amicus)

_____

who is appellant        , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity? ☐YES ☒NO

2.    Does party/amicus have any parent corporations? ☐YES ☒NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐YES ☒NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☒NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☒NO
      If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☒NO
      If yes, identify any trustee and the members of any creditors' committee:

Signature: _____    Date: _12/16/14_____

Counsel for: _Appellants_____

## CERTIFICATE OF SERVICE
****************************

I certify that on _12/16/14_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____          _12/16/14_____
        (signature)                      (date)

- 2 -

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................. iii

JURISDICTIONAL STATEMENT ...................................................... 1

STATEMENT OF ISSUES ................................................................. 1

STATEMENT OF THE CASE ............................................................. 2

    PROCEDURAL HISTORY .......................................................... 2

        STATEMENT OF FACTS ..................................................... 4

SUMMARY OF ARGUMENT ........................................................... 10

ARGUMENT ................................................................................... 14

    STANDARD OF REVIEW ........................................................ 14

    I.    THE DISTRICT COURT LACKED SUBJECT MATTER JURISDICTION OVER APPELLANTS' CLAIMS AND THEREFORE ERRED IN DENYING APPELLANTS' MOTION TO REMAND ................................................. 15

    II.   APPELLEES FAILED TO ESTABLISH THE NUMEROSITY REQUIREMENT FOR MASS ACTION JURISDICTION .............. 18

    III.  APPELLEES FAILED TO ESTABLISH THAT THE CLAIM OF EACH APPELLANT PLAINTIFF SATISFIED THE AMOUNT IN CONTROVERSY JURISDICTIONAL REQUIREMENT ............................................................ 22

    IV.  THE DISTRICT COURT ERRED IN GRANTING APPELLEES' MOTIONS TO DISMISS APPELLANTS' SLANDER OF TITLE AND NOTARIAL MISCONDUCT CLAIMS ............................................................................. 26

i

A.    THE DISTRICT COURT ERRED IN DISMISSING APPELLANTS' SLANDER OF TITLE CLAIMS .................27

B.    THE DISTRICT COURT ERRED IN DISMISSING APPELLANTS' CLAIM SEEKING TO VOID THE IMPROPERLY ACKNOWLEDGED LEASES .....................31

C.    THE DISTRICT COURT ERRED IN DISMISSING APPELLANTS' STATUTORY CAUSE OF ACTION FOR NOTARIAL MISCONDUCT ........................................35

V.    THE DISTRICT COURT ERRED WHEN IT GRANTED MAGNUM'S AND BELMONT'S MOTIONS FOR SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS OF FRAUD IN THE INDUCEMENT AS THERE WAS SUFFICIENT EVIDENCE IN THE RECORD TO ESTABLISH A GENUINE ISSUE OF FACT FOR A JURY TO DETERMINE WHETHER THE ELEMENTS OF THE CLAIM WERE PROVEN AND WHETHER THE CLAIMS WERE TIMELY FILED....................................................................37

CONCLUSION .......................................................................50

REQUEST FOR ORAL ARGUMENT ................................................50

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

PAGE(S)

**CASES:**

*Abrego v. Dow Chemical Company,*
 443 F.2d 676 (9th Cir. 2006) .........................................................17

*Anderson v. Liberty Lobby,*
 477 U.S. 242 (1986)..........................................................................43, 45

*Arnold v. Potomac Improvement Co.,*
 190 S.E. 685 (W. Va. 1937) ...........................................................44

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009)..........................................................................34

*Bell Atl. Corp. v. Twombly,*
 550 U.S. 554 (2007)..........................................................................34

*Biomet Orthopedics v. Tact Medical Instruments,*
 454 F.3d. 653 (7th Cir. 2006) .........................................................44

*Calhoun County Bank v. Ellison,*
 54 S.E.2d. 182 (W.Va. 1949) .........................................................38

*Chase v. Shop N. Save Warehouse Foods,*
 10 F.3d 424 (7th Cir. 1997) ............................................................25

*Childers Oil Co. v. Exxon Corp.*
 960 F. 2d 1265 (4th Cir. 1992) .......................................................49

*Coastal Oil and Gas Corp. v. Garza Energy Trust,*
 268 S.W.3d (Tex. 2008) ..................................................................40, 41

*Crosten v. Emax Oil. Co.,*
 464 S.E.2d 728 (W.Va. 1995) .........................................................38

*Dunn v. Rockwell,*
    689 S.E.2d. 255 (W.Va. 2009) ....................................................28, 29, 37, 46

*Dwyer v. Range Resources,*
    2014 WL 1648270 (W. Va. ND 2014)...................................................23, 24

*Epps v. JP Morgan,*
    675 F. 3d 315 (4th Cir. 2012) .........................................................................14

*Galloway v. Cinello,*
    423 S.E.2d 875 (W.Va. 1992) .............................................................*passim*

*Harless v. First National Bank in Fairmont,*
    289 S.E.2d 692 (W.Va. 1982) .......................................................................21

*Heller v. Tri-Energy Holdings, LLC,*
    877 F. Supp. 2d. 414 (W.Va. ND 2012).......................................................18

*Holmes v. Chesapeake Appalachia, LLC,*
    2012 WL 3647674 (W. Va. ND 2012) ..........................................................28

*Hunt v. Washington State Apple Ad. Comm.*
    432 U.S. 333 (1997)......................................................................................23

*In Re Williams,*
    584 S.E.2d 922 (W.Va. 2003) .......................................................................30

*Kahle v. Chesapeake Energy Corp.,*
    2011 WL 2182112 (2011) ......................................................................23, 25

*Kelford v. Bank of America,*
    2011 WL 5593790 (2011) .............................................................................26

*Kidd v. Mull,*
    595 S.E.2d 308 (W.Va. 2004) .......................................................................38

*Learning Curve Toys, Inc. v. Playwood Toys Inc.,*
    342 F3d 714 (7th Cir. 2007) .........................................................................44

iv

*Lengyel v. Lint,*
    280 S.E.2d 66 (W.Va. 1981) .........................................................................38

*Lontz v. Tharp,*
    413 F.3d. 435 (4th Cir. 2005) .....................................................................14

*Love v. Teter,*
    24 W.Va 741 (1884) ....................................................................................38

*Lowrey v. Alabama Power Company,*
    483 F.3d. 1184 (11th Cir. 2007) .............................................................16, 19

*Miller v. Chesapeake Appalachia,*
    2012 WL 1085805 (2012) ........................................................................23, 24

*Mississippi ex rel Hood v. AU Optronics Corp.*
    134 S. Ct. 736 (5th Cir. 2014) ...............................................................19, 20

*Mulcahy v. Columbia Organic Chemicals Company, Inc.,*
    29 F.3d. 148 (4th Cir. 1994) ......................................................................18

*Nemet Chevrolet Ltd. v. Consumeraffairs.com, Inc.,*
    591 F.3d 250 (4th Cir. 2009) ......................................................................34

*Niemi v. NHK Spring Co.,*
    543 F.3d 294 (6th Cir. 2008) ......................................................................44

*O'Daniels v. City of Charleston,*
    490 S.E.2d 800 (W.Va. 1997) .....................................................................21

*Stemp Square Assoc., L.L.C. v. G.D.F., Inc.,*
    211 F. 3d 846, 850 (4th Cir. 2000).  ...........................................................43

*Stemple v. Dobson,*
    400 S.E.2d 561 (W.Va. 1990) .....................................................................46

*Stone v. Chesapeake Appalachia, LLC,*
    2013 WL 2097397 (2013) .......................................................................40, 41

*Strawn v. AT&T Mobility, LLC,*
   530 F.3d 293 (4th Cir. 2008) ......................................................17, 18, 22, 23

*TXO Production Corp. v. Alliance Resources Corp.,*
   419 S.E.2d 870 (W.Va. 1992) ..................................................................*passim*

*U.S. v. Harless,*
   76 F.2d 317 (4th Cir. 1985) ..........................................................................44

*Vorholt v. One Valley Bank,*
   498 S.E.2d 241 (W.Va. 1997) ......................................................................29

**STATUTES:**

28 U.S.C. §1291 ...................................................................................................1

28 U.S.C. § 1332 (2011) .............................................................................*passim*

28 U.S.C. § 1453 (2011) ..............................................................15, 16, 18, 23

W.Va. Code § 29C-3-102 (1984).............................................................32, 34

W.Va. Code § 29C-4-301 (1984).............................................................32, 34

W.Va. Code § 29C-6-101 (1985).........................................................10, 12, 35

W.Va. Code § 29C-6-102 (1984).................................................................36

W.Va. Code § 29C-6-103 (1984).................................................................36

W.Va. Code § 29C-6-201 (1984).................................................................36

W.Va. Code § 39-1-2 (1933) ........................................................................26

W.Va. Code § 55-2-12 (1959) .........................................................28, 36, 37

**PERIODICAL:**

Guyon Knight, *The CAFA Mass Action Numerosity Requirement:*
*Three Problems with Counting to 100,*
   78 Fordham L. Rev. 1875 (2010) .................................................................19

## JURISDICTIONAL STATEMENT

The District Court found that it had subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. §§ 1332(d)(2) and (11) and, alternatively, conventional diversity of citizenship over each individual Appellant jurisdiction per 28 U.S.C. § 1332(a).

On September 11, 2013, the District Court entered an order denying Appellants motion to remand and granting Appellees' motion to dismiss certain of Appellants' claims. JA 565. On October 14, 2014, the District Court entered an order granting summary judgment in favor of Appellees on Appellants' remaining claims, and entered a judgment order in favor of Appellees. JA 1,251, 1,284. Appellants timely filed a notice of appeal on November 12, 2014.

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.  Whether the District Court erred in finding that it had jurisdiction over Appellants' claims pursuant to 28 U.S.C. §§ 1332(a), (d)(2) and (11) and in so doing, denied Appellants' motion to remand?

2.  Whether the District Court erred in granting Appellees' Rule 12(b)(6) motion regarding Appellants' slander of title claim and other claims?

3.  Whether the District Court erred in granting Appellees' Rule 12(b)(6) motion regarding Appellants' "notarial misconduct" claims?

4.  Whether the District Court erred in granting Appellees' motion for summary judgment regarding Appellants' fraudulent inducement claim.

1

## **STATEMENT OF THE CASE**

## **PROCEDURAL HISTORY**

Appellants are owners of oil and gas rights in various parcels of realty located in Preston County, West Virginia. Each Appellant executed a lease regarding their respective oil and gas rights in favor of Appellee Magnum. On November 9, 2012, Appellants filed a single complaint in the Circuit Court of Preston County, West Virginia naming 121 individuals as plaintiffs. The litigation concerned 76 oil and gas leases executed by the Appellants concerning their respective tracts of realty.

In addition to the filing of the above described complaint, dated November 9, 2012, Appellants filed a second complaint in the Circuit Court of Preston County, dated November 13, 2012, on behalf of naming 8 individual plaintiffs, This line of cases was later consolidated pursuant to a District Court order for purposes of discovery.

As required by Rule 3(a) of the West Virginia Rules of Civil Procedure, the Preston County Circuit Clerk assigned separate civil action numbers to those plaintiffs who were spouses or plaintiffs who had executed oil and gas leases as co-owners of realty and assessed each case so designated a separate filing fee. [1] Using

---

[1] Rule 3(a) of the West Virginia Rules of Civil Procedure states, in relevant part:

> For a complaint naming more than one individual plaintiff not related by marriage, a derivative or fiduciary relationship, each plaintiff shall be assigned a separate civil action number and be docketed as a separate civil action and be charged a separate fee by the clerk of a circuit court.

this process, the Preston County Clerk designated 67 actions to which were assigned Civil Action Nos. 12-C-235 through 12-C-302, and Civil Action No. 12-C-305.

On February 28, 2013, Appellees Magnum Land Services, LLC, Belmont Resources, LLC and Enerplus Resources (USA) Corporation (hereafter "Magnum", "Belmont", and "Enerplus" respectively) filed 67 identical Notices removing each of the 67 Preston County cases to the United States District Court for the Northern District of West Virginia. The removed actions were designated Civil Action Nos. 1:13-cv-00033 IMK through 1:13-cv-00100 IMK. On removal, Appellees claimed that federal "mass action" jurisdiction existed pursuant to 28 U.S.C. § 1332(d)(2)**.** JA 28. Alternatively, Appellees claimed that diversity of citizenship jurisdiction existed pursuant to 28 U.S.C. § 1332(a). JA 30.

On March 7, 2013, Appellees Belmont and Enerplus jointly filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure asserting that Appellants' Complaint failed to state claims upon which relief may be granted. JA 156.  On March 7, 2013, Magnum, Belmont and Enerplus served Rule 12(b)(6) motions. JA 184 Appellants filed their motion to remand on March 28, 2013. JA 386.

On September 10, 2013, the District Court convened a scheduling conference at which time it took up Appellants' motion to remand and Appellees' Rule 12(b)(6) motions. The District Court, ruling from the bench, denied Appellants' motion to

remand, finding that the Court had both CAFA "mass action" jurisdiction and diversity jurisdiction. JA 463-66. The District Court granted Appellees' motion to dismiss Appellants' slander of title, notarial misconduct, and fraud claims with prejudice. JA 477, 481, 483, 498. The District Court dismissed in part Appellants' conspiracy claim and tort of outrage claim without prejudice. JA 506, 508. On September 11, 2013, the District Court entered an order summarizing its rulings made at the September 10, 2013 hearing. JA 565.

On July 3, 2014, Appellees Magnum, Belmont and Enerplus filed motions for summary judgment regarding Appellants' claims that had survived the District Court's order granting of Appellees' motion to dismiss. On October 14, 2014, the District Court entered an order granting summary judgment in favor of Appellees on all of Appellants' remaining claims, and entered a judgment order in favor of Appellees. JA 1,251, 1284.

### STATEMENT OF FACTS

With the exception of four individuals named in their capacity as trustees of Harbor of Life Emmanuel Apostolic Church, Appellants are owners of various oil and gas tracts located in Preston County. Appellants' claims arise out of oil and gas leases executed by Appellants in favor of Defendant Magnum Land Services in the summer of 2008. JA 52. The majority of the oil and gas tracts at issue are titled jointly. For example, married couples who own their respective oil and gas estates

jointly account for 70 of the Appellants. Four of the nominal Appellants in the state action are trustees of a church. Twenty-three of the Appellants own their respective oil and gas tracts jointly. Twenty-four of the Appellants are sole owners of their respective oil and gas tracts. Thus, while there are 121 nominal Appellants identified in the Complaint, the Complaint concerns only 76 oil and gas leases executed by various Appellants.

In early 2007, Ed Walker, a Michigan businessman with many years of experience in oil and gas exploration, established Belmont Resources, LLC (Belmont), along with two business associates from Texas (Arthur Preston and David Wheeler). JA 1,335, 1,336. Walker was the managing member of Belmont JA 1,335. Belmont, established in April of 2007 as a Michigan entity, was Walker's creation solely for the acquisition of oil and gas leases in West Virginia. JA 1,335, 1,337. Walker had been a long-time acquaintance of Terence Goodell, another Michigan resident, with similar experience in the oil and gas industry, primarily in lease take offs, lease acquisitions and rights-of-way. JA 1,354, 1,355.

Prior to 2007, Terence Goodell, the founder of Magnum Resources, LLC (Magnum), also a Michigan entity, had been acquiring leases in Wood County, West Virginia. JA 1,359. Ed Walker, after finding out that Goodell was acquiring leases, contacted Goodell in February or March of 2007, expressing an interest in putting together acreage in Preston County. JA 1,356-1,359. Walker and Goodell, by an

informal, but written, agreement set out the parameters of the lease acquisition project in West Virginia that included the Preston County acreage (approximately 8,000 acres). JA 1,370-1,371.

The agreement between Walker and Goodell contemplated acquiring leases for a total of 80,000 acres in several West Virginia counties, Garrett County, Maryland and Wyoming County, Pennsylvania. JA 1,338-1,340. Magnum (Terence Goodell and Ed Thaxton, Preston County project manager) was responsible for hiring the landmen to acquire the leases from the property owners, while Belmont assumed all costs associated with lease acquisition including landmen wages and costs, and the payments to landowners by way of lease bonus payments. JA 1,374-1,375, 1,360, 1,387.

The lease bonus offers and the royalty percentages were established by Belmont. No Magnum employee or landmen had the authority to offer more than the per acre bonus approved by Belmont and 12½% royalty, without the approval of Belmont (Walker). JA 1,376-1,380. The landmen, in fact, had little room to negotiate with landowners regarding most terms of the lease, aside from some limited terms concerning warranty, free gas, hold harmless, water clauses, etc. JA 1,379, 1,380-1,381. Thus, there is little doubt that Belmont controlled the majority of the significant terms of the leases signed by plaintiff landowners.

Ultimately, Magnum acquired over 80,000 acres of land in West Virginia, Maryland and Pennsylvania which included the nearly 8,000 acres owned by Appellants, which it assigned to Belmont as per the agreement between Walker and Belmont in 2010. JA 1,361-1,362.

David Schriml is believed to be an employee and/or agent of Magnum and/or Belmont. JA 52. Appellants' alleged that at the direction and in furtherance of the business interests of Magnum and Belmont, Schriml made application and was appointed a commissioner pursuant to West Virginia Code § 29-4-14 for the purpose of acknowledging deeds and other documents of title for recordation in the state of West Virginia. In his application, Defendant Schriml represented that he was employed by Defendant Magnum. JA 53. In reliance on representations made by representatives, agents and employees of Appellees Magnum and Belmont, each Appellant executed oil and gas leases in favor of Magnum regarding Appellants' respective oil and gas properties. JA 53. Appellants alleged that Schriml, in his capacity as representative, employee and agent of Appellees Magnum and Belmont, willfully and knowingly falsified the acknowledgments of Appellants' signatures on the leases acquired from Appellants. Appellants further allege that beginning on November 13, 2007, Magnum and Belmont caused the improperly acknowledged oil and gas leases to be recorded among the Preston County land records. JA 51. Appellants further alleged that Schriml had a disqualifying interest in the lease

7

transactions for which he provided notarial services, thereby rendering the improperly acknowledged leases voidable under West Virginia law. JA 55, 58.

In 2010, Belmont (along with Sinclair Oil and Gas Company) sold their interest in the West Virginia (Preston, Barbour and Taylor Counties) and Maryland (Garrett County) leases, totaling more than 58,000 acres, for more than Ninety-Seven Million Dollars ($97,000,000). JA 1,345-1,350. The per acre price of the sale of these 58,000 acres to Enerplus was $1,666. JA 1,350.

The supplemental discovery responses of Belmont reflect that of the $97,000,000 related to the sale of the West Virginia and Maryland acreage, Belmont's share was over $32,000,000 in 2010. JA 1,351, 1,416. Ed Walker's interest in Belmont Resources (Sharing Ratio) was 26.6%, thus his interest in this sale to Enerplus was roughly $8,000,000. JA 1,418. Walker's interest in Belmont was paid through a corporation Walker established by the name of Edsco. JA 1,341. Belmont also retained approximately 5½% to 6% as an overriding royalty interest in the leases which entitles Belmont to receive royalties paid on minerals extracted from Appellants' land for the duration of the leases.

Goodell, as part of his agreement with Walker regarding the lease acquisition project in West Virginia, was given a 5% share in Belmont in 2010. JA 1,365, 1,418. Goodell's interest in Belmont's distribution from the sale to Enerplus in 2010, of over 58,000 acres (including the Preston County acres at issue) approximated 1.5

million dollars (.05 x $32,655,360). JA 1,420. Goodell also received a small overriding royalty interest (1%). JA 1,363-1,364, 1,371.

Conversely, as reflected in Belmont's Supplemental Disclosure of Documents, the total amount paid to the Appellants in lease bonus money for all 7,562.63 net mineral acres leased was $344,214,20. JA 1,422-1,429.

Many of the landmen engaged to acquire the leases, which ultimately were assigned by Magnum to Belmont, engaged in what many of the Appellants believe was an inappropriate and incorrect reference to the rule of capture. As testified to by many Appellants, they were told that even if they did not sign a lease, their gas would nonetheless be taken.

Many of these same Appellants further testified that this concern (that they could lose their gas if they did not sign a lease), was a motivating factor in their signing the leases in the first place. Joseph Schriml, one of the landmen working on the Preston County project, testified that this method, if employed by other landmen, was inappropriate, as it was not in his "nature" to "strong-arm anybody." JA 1,716-1,717. In fact, Schriml testified he would have refused to make such representations had he been told to. JA 1,717-1718. Notwithstanding, numerous Appellants testified that the Magnum landmen told them they could take their gas away regardless of whether they signed a lease. The overwhelming majority (68/89) of the leases signed by the Appellants were $5 per acre ($25.00 paid up leases). JA 1,422-1,429.

Appellants' Complaint contains nine counts. Count I asserted a slander of title claim and sought expungement of improperly acknowledged oil and gas leases from among the Preston County land records and damages. Count II sought to void the improperly acknowledged oil and gas leases due to the disqualifying interest of Schriml, the person who had acknowledged the leases. Count III asserted a statutory cause of action for notarial misconduct pursuant to West Virginia Code § 29C-6-101 *et seq.* Count IV asserted a claim for fraud in the inducement. Count V asserted a claim for fraud. Count VI sought to have the oil and gas leases deemed void for unconscionability. Count VII asserted a claim for civil conspiracy. Count VIII asserted a tort of outrage claim. Count IX asserted a claim for declaratory relief.

## SUMMARY OF ARGUMENTS

The District Court erred in concluding that "CAFA" subject matter jurisdiction existed the United States Code § 1332(d)(2)(11), and diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332(a), and in doing so erred in denying Appellants' motion to remand. The burden was on the removing defendants to establish federal jurisdiction.

CAFA's requirement of monetary relief claims of 100 or more persons has not been met because plaintiffs' complaint only involved 76 oil and gas leases.

Appellees had failed to meet their burden of establishing the requirements for federal jurisdiction insofar as appellees did not provide any evidence of the amount in controversy at the time the petition for removal was filed with the District Court. Appellees in support of their petition for removal relied on plaintiffs' allegations of the fair market value of the mineral rights at the time the subject leases were signed, instead of the current value of the mineral rights at the time the petition was filed.

The District Court erred in dismissing Appellants' slander of title claim which was based on the fact that the subject leases were improperly acknowledged. In reaching this decision the District Court concluded that a two year statute of limitations was applicable, which began to run upon the recording of the leases in 2007 and 2008. Additionally the District Court found that even if there was not a two year statute of limitations the Appellants suffered no injury as a result of the leases.

Appellants believe that the District Court erred in dismissing Appellants' cause of action for slander of title because the recording of the subject leases does not provide constructive notice under West Virginia law. Additionally it is the Appellants' belief that insofar as the recording of the leases prevented them from leasing their mineral rights to other oil and gas companies, they have suffered damages sufficient to support their claim for slander of title.

The District Court dismissed Appellants' claims seeking to void the improperly acknowledged leases because the Appellants' had conceded that they executed the leases. Alternatively, the District Court reached the conclusion that Appellants' complaint did not contain sufficient factual evidence to sustain their claim.

Appellants' assert that whether the leases were actually signed by Appellants is not relevant once a disqualifying interest has been established. Rather the focus of the Court's analysis should be whether there was improper benefit as well as whether any harm resulted from the transaction.

Appellants' assert that their allegations seeking to have the leases declared void because of the improper acknowledged leases were sufficiently pled to allow the District Court to infer more than a mere possibility of misconduct. Appellants' complaints allege that David Schriml was an employee and agent of Defendant Magnum and that in that capacity falsified the acknowledgements of Appellants' signatures on the subject leases. Such averments provide a plausible claim on the face of the complaint, and thus the District Court erred in dismissing this cause of action.

The District Court dismissed Appellants' statutory cause of action under West Virginia Code § 29C-6-101, finding that such a cause of action was time-barred and Appellants suffered no injury as a result of the alleged misconduct.

12

It is the argument of the Appellants' that the District Court's application of a two-year statute of limitations disregards the fact that under West Virginia law, the improperly acknowledged documents of title do not provide constructive notice, and that the Appellants have suffered damages due to their inability to lease their mineral rights to another oil and gas company. Therefore, the District Court erred in dismissing Count III of Appellants' complaint.

Finally, it is the argument of the Appellants' that the District Court erred in granting defendants' motions for summary judgment on Appellants' claim of fraud in the inducement.

The District Court acknowledged that representations made by the landmen, that led many of Appellants to believe that their oil and gas could be extracted without compensation if they did not sign the lease were false. However, the Court nevertheless found that it was not reasonable for Appellants' to believe the fraudulent representation of defendant Magnum's agents. Alternatively, the District Court found that even if the Appellants acted reasonably in relying on the land man's representations, their claim was time-barred.

Appellants believe that the evidence submitted to the District Court through depositions and interrogatory responses supports the fact that the vast majority of Appellants were misled with respect to the application of the "rule of capture" as it pertains to hydraulic fracturing. The fact that so many Appellants believed the

misrepresentations of the landmen and failed to legally challenge the misrepresentations is proof that their belief and reliance thereon was reasonable. Whether Appellants acted "reasonably" in relying on the defendant's landmen's fraudulent representations is a decision that should have been decided by a jury.

Lastly, the Appellants submitted evidence regarding when they "discovered" that the misrepresentations of the landmen were actionable. Such evidence included their testimony at depositions well as their responses to interrogatories. This evidence was sufficient to raise a question of fact to be decided by a jury. Thus, the District Court's decision to grant defendants' motion for summary judgment on Appellants' cause of action for fraudulent inducement was in error.

## ARGUMENT

## STANDARD OF REVIEW

On appeal, all questions bearing on the subject matter jurisdiction of the federal courts, including a district court's denial of a motion to remand, are reviewed *de novo*. *Lontz v. Tharp,* 413 F.3d 435 (4th Cir. 2005). A district court's dismissal pursuant to a Rule 12(b)(6) motion for failure to state a claim is reviewed *de novo*. *Epps v. JP Morgan Chase Bank,* 675 F.3d 315 (4th Cir. 2012).

## I.  THE DISTRICT COURT LACKED SUBJECT MATTER JURISDICTION OVER APPELLANTS' CLAIMS AND, THEREFORE, ERRED IN DENYING APPELLANTS' MOTION TO REMAND

Appellees claim that Appellants' state court action constitutes a "mass action" for which original federal jurisdiction exists pursuant to 28 U.S.C. §§ 1332(d)(2) and (11). The Class Action Fairness Act (hereafter "CAFA") substantially revised several sections of the United States Code dealing with the jurisdiction of federal courts. CAFA's revisions to 28 U.S.C. § 1332 created an additional basis for federal jurisdiction for certain state court proceedings that constitute "class action" as defined in 28 U.S.C. § 1332(d)(1). 28 U.S.C. § 1453 was added to allow removal of class actions.

28 U.S.C. § 1332(d)(2) provides for federal class action jurisdiction where the following criteria are present:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which—
>
> > (A)    any member of a class of plaintiffs is a citizen of a State  different from any defendant;
> >
> > (B)    any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or
> >
> > (C)    any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

15

CAFA provides that federal class-action jurisdiction provided for in § 1332(d)(2) is also applicable to "mass actions" as defined in 28 U.S.C. § 1332(d)(11). Section 1332(d)(11) states:

> (A) For purposes of this subsection and section 1453, a mass action shall be deemed to be a class action removable under paragraphs (2) through (10) if it otherwise meets the provisions of those paragraphs.
>
> (B)(i) As used in subparagraph (A), the term "mass action" means any civil action … in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a).

Summarizing the elements to establish CAFA mass action jurisdiction, the Eleventh Circuit stated:

> Combining the requirements drawn from § 1332(d)(11)(B)(i)'s definition of a mass action and those drawn from § 1332(d)(11)(A)'s incorporation of CAFA's class action requirements into the mass action context, we now have identified at least four requirements for an action to be deemed a mass action. These requirements are: (1) an amount in controversy requirement of an aggregate of $5,000,000 in claims; (2) a diversity requirement of minimal diversity; (3) a numerosity requirement that the action involve the monetary claims of 100 or more plaintiffs; and (4) a commonality requirement that the plaintiffs' claims involve common questions of law or fact.

*Lowrey v. Alabama Power Company,* 483 F.3d 1187, 1203-04 (11th Cir. 2007). If these four elements are established by the party claiming federal mass action jurisdiction, § 1332(d)(11)(B)(i) further provides that mass action jurisdiction exists only over those plaintiffs whose individual claims exceed the $75,000.00

16

jurisdictional threshold contained in section 1332(a). The claims of "mass action" plaintiffs falling below the $75,000.00 jurisdictional limit are to be remanded by the district court. *See Abrego v. Dow Chemical Company,* 443 F.2d 676 (9th Cir. 2006).

The Fourth Circuit has held that CAFA did not alter the long-standing rule that the party seeking federal jurisdiction on removal bears the burden of establishing such jurisdiction. *Strawn v. AT&T Mobility, LLC*, 530 F.3d 293 (4th. Cir. 2008). *Strawn* involved a class action removed from West Virginia state court to the United States District Court for the Southern District of West Virginia. Defendant claimed that federal jurisdiction existed pursuant to section 1332(d)(2). The Southern District granted plaintiffs' motion to remand, concluding that defendant had failed to establish the $5 million jurisdictional threshold required by CAFA. On appeal, defendant arguing that CAFA dispensed with the requirement that a removing defendant has the burden of establishing federal jurisdiction, but rather placed the burden of disproving the existence of federal jurisdiction on a party seeking remand. 530 F.3d at 295-97. Rejecting defendant's argument, the Fourth Circuit stated:

> We begin with the undergirding principle that federal courts, unlike most state courts, are courts of limited jurisdiction, created by Congress with specified jurisdictional requirements and limitations … Accordingly, a party seeking to adjudicate a matter in federal court must allege and, when challenged, must demonstrate the federal court's jurisdiction over the matter. (citations omitted)

530 F.3d at 296. Analyzing CAFA's legislative history, the Fourth Circuit held:

17

> We thus conclude that in removing a class action based on diversity jurisdiction under 28 U.S.C. §§ 1453 and 1332(d), the party seeking to invoke federal jurisdiction must allege it in his notice of removal and, when challenged, demonstrate the basis for federal jurisdiction. (citations omitted)

530 F.3d at 298.

In determining whether a removing defendant has satisfied the burden of establishing federal jurisdiction, a district court must first consider whether federal jurisdiction is established on the face of the complaint. Where the claimed basis for federal jurisdiction is not apparent on the face of the complaint, the court may consider facts established in the notice of removal along with other information contained in the record on removal. *Heller v. Trienergy, Inc.,* 877 F. Supp. 2d. 414 (N.D. W. Va. 2012). The Fourth Circuit requires that the removing party establish, by a preponderance of the evidence, the jurisdictional elements necessary to invoke federal jurisdiction. *Strawn, supra*. Where federal jurisdiction is sought on removal, removal jurisdiction must be strictly construed and, if federal jurisdiction is doubtful, remand is required. *Mulcahy v. Columbia Organic Chemicals Company, Inc.,* 29 F.3d 148 (4th Cir. 1994).

## II.   APPELLEES FAILED TO ESTABLISH THE NUMEROSITY REQUIREMENT FOR MASS ACTION JURISDICTION

28 U.S.C. § 1332(d)(11)(B)(i) requires that to constitute a mass action, the civil action in question must involve "monetary relief claims of 100 or more persons…". CAFA does not define "persons" as used in the foregoing section,

18

causing courts and commentators to question how CAFA's mass action numerosity requirement is to be met. *See, e.g., Lowery v. Alabama Power, supra* ("CAFA's mass action provisions present an opaque, baroque maze of interlocking cross-references that defy easy interpretation…". 483 F.3d at 1198); Guyon Knight, *The CAFA Mass Action Numerosity Requirement: Three Problems with Counting to 100,* 78 Fordham L. Rev. 1875 (2010).

*Mississippi ex rel Hood v. AU Optronics Corp.,* 134 S. Ct. 736, 187 L. Ed 2d. 654 (2014), concerned a *parens patriae* action brought by the state of Mississippi as the sole plaintiff asserting state law claims on behalf of the state and its citizens against liquid crystal display manufacturers. Defendants removed, claiming that CAFA jurisdiction existed because the State of Mississippi's complaint involved claims of more than 100 unnamed persons, namely, were Mississippi citizens who were the real parties in interest. The District Court granted plaintiff's motion to remand.

The Fifth Circuit reversed, concluding that individual citizens of the state of Mississippi where the real parties in interest in the litigation and that there were more than 100 of those unnamed persons, thereby satisfying CAFA's numerosity requirement. 134 S. Ct. at 741.

The Supreme Court reversed, concluding that CAFA's "100 or more persons" phrase did not indicate Congress' intention that CAFA's numerosity requirement

could be met by counting persons not named as plaintiffs in the litigation. 134 S. Ct. at 742. The holding in *AU Optronics* is thus consistent with decisions indicating that federal courts are courts of limited jurisdiction and that such grants of federal jurisdiction shall be strictly construed.

Appellees contend that CAFA's requirement of "monetary relief claims of 100 or more persons" satisfied because 121 persons are named as plaintiffs in Appellants' Complaint. Appellants' assert, however, that CAFA's numerosity requirement is not met by merely counting the number of plaintiffs listed in a complaint. To do so would render the phrase "monetary relief claims of 100 or more persons" superfluous. As indicated by the Supreme Court in *AU Optronics,* had Congress intended that CAFA's numerosity requirement was satisfied by naming 100 plaintiffs in a lawsuit, Congress could have written the legislation in that fashion. Rather, CAFA requires that "**monetary relief claims** of 100 or more persons" must be presented in order to permit mass action jurisdiction. Appellants assert that while this action involves 121 nominal plaintiffs, only 76 monetary relief claims are involved in this litigation and that, therefore, CAFA's numerosity requirement is not met.

West Virginia law requires that all persons with an interest in realty whose rights may be effected by a court proceeding are indispensable parties. Failure to include all interested persons as parties in litigation concerning interests in realty will

render any order concerning such property rights null and void. *O'Daniels v. City of Charleston*, 490 S.E.2d 800 (W.Va. 1997). As described above, Appellants' Complaint involves disputes concerning 76 oil and gas leases. Since Appellants seek to have the leases voided, West Virginia law required that all persons with an ownership interest in the leases be named as parties to the litigation. This required the inclusion of the spouses of jointly owned realty as well as all co-owners of other jointly owned tracts.

Appellants assert that the required inclusion of all co-owners as plaintiffs in the Preston County action does not establish that each plaintiff is a "person" with a monetary relief claim for purposes of satisfying CAFA's mass action numerosity requirement. For example, four church trustees are listed as plaintiffs in the Complaint. Appellants' assert that the four trustees do not hold separate monetary relief claims, each of which should be counted toward the 100 person numerosity requirement for CAFA mass action jurisdiction. Rather, the trustees have one monetary relief claim or growing out of the lease they executed on behalf of the church in favor of Magnum. Likewise, Appellants assert that co-owners of realty who were named as plaintiffs to satisfy West Virginia procedural law do not thereby automatically constitute "persons" asserting monetary relief claims. West Virginia law recognizes that there can only be "one recovery of damages for one wrong or injury…" *Harless v. First National Bank in Fairmont,* 289 S.E.2d 692 (W. Va. 1982).

21

Here, the wrong or injury concerns the negotiation for and execution of oil fewer than 100 oil and gas leases. Where the oil and gas estates in question are owned jointly, either by spouses or otherwise, any award of damages would be based on a single "monetary relief claim" based upon each of the 76 oil and gas leases executed by Appellants. Thus, while there may be 121 nominal plaintiffs listed in the Complaint, there are only 76 monetary relief claims presented in this action. Appellants therefore respectfully assert that the District Court erred in concluding that the numerosity threshold necessary to invoke CAFA mass action jurisdiction existed in this case.

## III. APPELLEES FAILED TO ESTABLISH THAT THE CLAIM OF EACH APPELLANT PLAINTIFF SATISFIED THE AMOUNT IN CONTROVERSY JURISDICTIONAL REQUIREMENT

Defendants have failed to meet their burden of establishing the requirements for federal jurisdiction over this case because they have failed to provide any evidence that the Plaintiffs' claims are valued at more than Five Million Dollars ($5,000,000) or that the amount in controversy for any particular Plaintiff is in excess of Seventy Five Thousand Dollars ($75,000.00).

The Fourth Circuit Court of Appeals has addressed removal in a CAFA action in *Strawn v. AT&T Mobility, LLC*, 530 F.3d 293 (2008). Despite AT&T's argument which relied on the legislative history of CAFA that any uncertainty with respect to jurisdiction should be resolved in favor of finding federal jurisdiction, this Court found otherwise. Rather this Court stated:

"We thus conclude that in removing a class action based on diversity jurisdiction under 28 U.S.C. §§ 1453 and 1332(d), the party seeking to invoke federal jurisdiction must allege it in his notice of removal, when challenged, demonstrate the basis for federal jurisdiction.  In so holding, we join the six other circuits that have considered this issue." <u>Strawn</u> at 298.

It is well established that the amount in controversy is measured by the value of the object of the litigation.  *Hunt v. Washington State Apple Adver. Com'n,*, 432 U.S. 333 (1977).

There are three cases that are highly instructive on the proper analysis that should have been applied in this matter, *Dwyer v. Range Resources* Unpublished WL 1648270 (Northern District of West Virginia 2014), *Miller v. Chesapeake Appalachia* Unpublished WL 1085805 (Northern District of West Virginia 2012), and *Kahle v. Chesapeake Energy Corp*. Unpublished WL 2182112 (Northern District of West Virginia 2011).  All of these cases were actions seeking declaratory judgments terminating oil and gas leases.  All three cases addressed the amount in controversy in determining whether removal to federal court was appropriate.

In *Dwyer, Miller* and *Kahle*, the District Court determined that value of the lease is the cost to reacquire the lease at the time of the petition to remove was filed.

"This Court has previously found that the cost of reacquiring a lease, which is the object of the litigation, is the correct measurement of value in similar cases as it represents the value of the lease at the time of the remand." *Dwyer* at 2.

In *Dwyer* the Court said "The objects of the litigation are the plaintiffs' leases. Therefore regardless of whether the plaintiffs are seeking monetary damages or a declaratory judgment, the value of the leases is what determines whether the amount in controversy is satisfied". *Id*.

In *Dwyer,* defendant's landman who was responsible for acquiring land and lease acquisitions in West Virginia, submitted an affidavit that he had personal knowledge concerning the current market prices for oil and gas in this area, that he was familiar with both properties at issue, and that the prevailing market rates for a bonus payment for an equivalent oil and gas lease in Brooke County, West Virginia exceeded $614.00 per acre. The District Court found that, through the affidavit, the defendants had shown that it is more likely than not that the cost to reacquire the subject oil and gas lease at the time of the removal petition was filed would exceed $75,000 exclusive of costs.

In *Miller*, defendant produced a landman who was familiar with the subject lease as well as the land which the lease covered. He also testified that he was "familiar" with the current market prices and that the cost to reacquire the subject lease should it be declared null and void, and that this cost would exceed $75,000, assuming that the rights could be reacquired. Thus, the District Court was satisfied that defendant had met its burden in establishing that the amount in controversy justified removal to federal court.

In *Kahle,* once again the court found that defendants had met their burden of proving that the amount in controversy exceeded $75,000 by submitting an affidavit of their landman providing the cost of the defendants to secure the same property rights if a declaratory judgment was entered that voided the lease.

In the case at bar, defendants did not introduce a shred of evidence as to the current market value or the cost to reacquire the leases at the time defendants filed their petition to remove.  Rather, defendants, in support of their petition for removal, submitted an affidavit from their landman which simply multiplied the acreage of the subject leases involved in the lawsuit by Twenty-five Hundred Dollars ($2,500) and Five Thousand Dollars ($5,000). JA 415-418. These per acre amounts were based on the plaintiffs' allegation of what bonuses other landowners in the area were receiving at the time plaintiffs signed their leases, which is the basis for the District Court's decision to deny plaintiffs' motion to remand. JA 590-591.  This, of course, has no bearing on the fair market value of such rights at the time the petition for removal was filed.

It is well established that the District Court was limited to examining only evidence that was available at the moment the petition for removal was filed.  *Chase v. Shop N Save Warehouse Foods* 110 F.3d. 424 (7th Cir. 1997).  Here, the record is devoid of <u>any</u> evidence concerning the fair market value of the subject leases at the time the petition for removal was filed.  "Removal cannot be based on speculation,

rather, it must be based on facts as they exist at the time of removal". *Kelford v. Bank of America* 2011 WL 5593790 (2011).

## IV.  THE DISTRICT COURT ERRED IN GRANTING APPELLEES' MOTIONS TO DISMISS APPELLANTS' SLANDER OF TITLE AND NOTARIAL MISCONDUCT CLAIMS

Counts I (Slander of Title), II (Disqualifying Interest of Acknowledging Party) and III (Official Misconduct of Notary Public) of Appellants' Complaint concerned the systematic failure of Magnum and its agents and employees to comply with West Virginia law regarding the acknowledgment and recording of documents of title. West Virginia Code § 39-1-2 establishes when a county clerk may record documents of title among the county land records. A county clerk may only record properly acknowledged documents of title. *Galloway v. Cinello,* 423 S.E.2d 875 (W. Va. 1992). The acknowledgment of a document of title must take place before a person authorized by law to acknowledge documents. In West Virginia, such persons are either notary publics or commissioners.

In granting Appellees' Rule 12(b)(6) motion regarding Appellants' slander of title and notarial misconduct claims, the District Court found that those claims were time-barred. Alternatively the District Court concluded that Counts I, II and III each failed to state claims upon which relief can be granted.

## A. THE DISTRICT COURT ERRED IN DISMISSING APPELLANTS' SLANDER OF TITLE CLAIMS

In ruling on Appellees' Rule 12(b)(6) motions, the District Court did not issue a written order containing findings of fact and conclusions of law. Therefore, the bases for the District Court's rulings must be gleaned from the transcript of the September 10, 2013 hearing wherein the court considered Appellees' motions to dismiss. Regarding Appellants' slander of title claim, the District Court concluded a two-year statute of limitations applied to slander of title claims under West Virginia law and that said two-year statute of limitations began to run upon Magnum's recording of the improperly acknowledged leases in 2007 and 2008. Alternatively, the District Court found that Appellants suffered no injury as a result of Magnum's recording of the improperly acknowledged leases. JA 475, 477.

In *TXO Production Corp. v. Alliance Resources Corp.*, 419 S.E.2d 870 (W.Va. 1992), the West Virginia Supreme Court of Appeals identified the elements of slander of title claim under West Virginia law. *TXO* stated:

The elements of slander of title are:

1. publication of
2. a false statement
3. derogatory to plaintiff's title
4. with malice
5. causing special damages
6. as a result of diminished value in the eyes of third parties.

27

*TXO, supra,* syl. pt 3). Appellants assert that if they prevail in voiding the improperly acknowledged leases, then the recording of such leases by Magnum necessarily constituted the malicious publication of a false statement in derogation of Appellants' title as required by *TXO, supra.* *See, Galloway v. Cinello*, 188 W.Va. 266, 423 S.E.2d 875 (1992).

The West Virginia Supreme Court has not prescribed the statute of limitations applicable to slander of title claims. Citing an unreported memorandum opinion in *Holmes v. Chesapeake Appalachia, LLC*, No.5:11CV123, 2012 WL 3647674 (N.D. W.Va. Aug. 23, 2012), Appellees argued that the two-year statute of limitations contained in West Virginia Code § 55-2-12 was applicable to West Virginia slander of title claims. JA 168, 184. The District Court agreed and further found that the two-year statute of limitations began to run from the date the improperly acknowledged leases were recorded among the Preston County land records. The District Court found that such recording gave Appellants constructive notice that their respective leases were improperly acknowledged. JA 471.

Appellants assert that in reaching this conclusion, the District Court disregarded the West Virginia Supreme Court of Appeals' decision in *Dunn v. Rockwell,* 689 S.E.2d 255 (W.Va. 2009). In *Dunn,* the West Virginia Supreme Court wrote at length regarding the methodology that must be employed to determine if a tort-based cause of action is time-barred, holding:

A five-step analysis should be applied to determine whether a cause of action is time barred. First, the court should identify the applicable statute of limitation for each cause of action. **Second, the court (or, if questions of material fact exist, the jury) should identify when the requisite elements of the cause of action occurred.** Third, the discovery rule should be applied to determine when the statute of limitations begin to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action… Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the potential cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing it the potential cause of action, the statute of limitations is tolled. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine. Only the first step is purely a question of law; the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact. (emphasis added)

*Dunn, supra*, syl. pt. 5.

West Virginia law requires that the party asserting a statute of limitations defense "must prove… when the cause of action 'accrued,' that is, when all of the elements existed such that the plaintiff *could* have filed an action…". *Vorholt v. One Valley Bank,* 498 S.E.2d 241, 249 (W.Va. 1997)(emphasis in original). Appellees' motions to dismiss made no attempt to establish when each of the six slander of title elements occurred and, therefore, when Appellants' cause of action for slander of title accrued. Rather, Appellees merely argued that since the improper acknowledgment of the leases had occurred more than two years prior to the commencement of suit, Appellants' slander of title claims were necessarily time-barred. The District Court agreed. JA 471, 472. In reaching this conclusion, the District Court did not recognize

West Virginia Supreme Court decisions holding that the recording of improperly acknowledged document of title does not provide constructive notice under West Virginia law. *See, In re Williams,* 231 W.Va. 780, 584 S.E.2d 922 (2003).

Appellants' assert that their slander of title claim could not have accrued until Appellants succeeded in voiding the oil and gas leases because of the disqualifying interest of Schriml who had improperly acknowledged the leases. The District Court thus erred in finding that Appellants' slander of title claim was time-barred.

In the alternative, the District Court concluded that dismissal of Appellants' slander of title claim was appropriate because Appellants' suffered no injury as a result of the recording of the improperly acknowledged leases. JA 477. This conclusion is at odds with West Virginia law regarding the elements necessary to state a claim for slander of title. In *TXO Production v. Alliance Resources*, 419 S.E.2d 870 (W.Va. 1992), the West Virginia Supreme Court held that the elements of a cause of action for slander of title are publication of a false statement derogatory to plaintiff's title with malice causing special damages resulting from diminished value of plaintiff's property in the eyes of third parties. *TXO, supra,* syl. pt.2. If Appellants' leases are voided because of the disqualifying interest of acknowledging party, Schriml, or by a finding that the leases are unconscionable, then the presence of such void leases of record in Preston County would plainly constitute the publication of a false statement derogatory to Appellants' title.

30

Per *TXO, supra,* the harm suffered by Appellants as a result of the publication of such false statements derogating their title include attorney fees incurred by Appellants to have the leases expunged from the county land records. 419 S.E.2d at 81. The Complaint avers that Appellants' lost the opportunity to lease their oil and gas tracts as a result of the presence of Magnum's improperly acknowledged leases of record in Preston County, thus satisfying *TXO* requirement that the value of Appellants' property was diminished in the eyes of third parties. JA 56. The District Court thus erred in concluding, in the alternative, that Count I of the Complaint failed to state a claim for slander of title upon which relief can be granted.

## B. THE DISTRICT COURT ERRED IN DISMISSING APPELLANTS' CLAIM SEEKING TO VOID THE IMPROPERLY ACKNOWLEDGED LEASES

Count II of Appellants' complaint asserted a common-law claim seeking to void the oil and gas leases improperly acknowledged by Shriml. In *Galloway v. Cinello,* 423 S.E.2d 875 (W. Va. 1992) the West Virginia Supreme Court held that the disqualifying interest of a notary public may result in the voiding of improperly acknowledged documents of title. In this regard, *Galloway* held:

> A notary's disqualifying interest can result in voiding an instrument that has been notarized by him. In deciding whether to void the instrument, a court should consider whether an improper benefit was obtained by the notary or any party to the instrument, as well as whether any harm flowed from the transaction…

31

> Once it is shown that a notary has a disqualifying interest in an instrument which he acknowledged, and a suggestion of actual prejudice, unfair dealing, or undue advantage is raised by an adverse party, then the burden shifts to the notary or any party seeking to support the challenged document to demonstrate that no improper benefit was obtained and no harm occurred as a result of the disqualified act.

*Galloway, supra,* syl. pts. 2, 3. West Virginia Code § 29C-3-102(b) defines when a

person providing notarial services has a disqualifying interest:

> For the purposes of this chapter, a notary public has a disqualifying interest in a transaction in connection with which notarial services are requested if he:

> May receive directly, and as a proximate result of the notarization, any advantage, right, title, interest, cash or property, **exceeding in value the sum of any fee properly received in accordance with section three hundred one, article four of this chapter,** or **exceeding his regular compensation and benefits as an employee whose duties include performing notarial acts for and in behalf of his employer** … (emphasis added)[2]

---

[2] West Virginia Code § 29C-4-301 establishes the fees that may be charged for notarial services and provides:

> The maximum fee in this state for notarization of each signature and the proper recordation thereof in the journal of notarial acts is two dollars for each signature notarized.

> > (a) The maximum fee in this state for certification of a facsimile of a document, retaining a facsimile in the notary's file, and the proper recordation thereof in the journal of notarial acts is two dollars for each eight and one-half by eleven inch page retained in the notary's file.

> > (b) The maximum fee in this state is two dollars for any other notarial act performed.

32

In granting Appellees' motion to dismiss Count II, the District Court found that despite the improper acknowledgment, Appellants conceded that they had executed the leases and that while the leases may have been improperly recorded, they remained valid between the Appellants and Appellee Magnum. JA 481. However, a dispute over the validity of the signatures on the document in question is not a precondition to relief under *Galloway*. In *Galloway*, supra, there was no dispute regarding whether the grantors of the deed of trust at issue signed the document. Rather, the issue presented was whether Galloway, who was designated as trustee under the deed of trust, impermissibly acknowledged the signatures of the secured party on the deed of trust and whether such improper acknowledgment rendered the deed of trust void, thereby transforming Cinello from a secured creditor to an unsecured creditor. 423 S.E.2d at 875. Per *Galloway,* where a disqualifying interest is established and the suggestion of actual prejudice, unfair dealing, or undue advantage is raised, the burden shifts to the acknowledging party or any person seeking to support the challenged document to demonstrate either that no improper benefit was obtained by the acknowledging party and no harm occurred as a result of the disqualified act. Thus, a complaint seeking to void a lease because of the disqualifying interest of the acknowledging party need not allege that the complainant suffered damages caused by the improper acknowledgment of the lease to state a claim for the voiding of the lease.

Alternatively, the District Court concluded Appellants' complaint did not contain sufficient factual averments regarding Appellants' lease avoidance claim as required by *Ashcroft v. Iqbal,* 556 U.S. 662, (2009). JA 480. In order for a claim to survive a motion to dismiss for failure to state a claim, a complaint must allege "enough facts to state a claim to relief that is plausible on its face" ' *Bell Atl. Corp. v. Twombly,* 550 U.S. 564, (2007). While detailed factual allegations are not required, the complaint must allege sufficient facts to allow a court, drawing on judicial experience, to infer more than a mere possibility of misconduct. *Nemet Chevrolet Ltd. v. Consumeraffairs.com, Inc.* 591 F.3d 250 (4th Cir. 2009).

Appellants assert that Count II of the complaint satisfies *Iqbal.* Appellants claim that the oil and gas leases improperly acknowledged by Schriml are voidable because Schriml had a disqualifying interest at the time he acknowledged the leases. West Virginia Code § 29C-3-102(b) defines a disqualifying interest to include the receipt by Schriml of value exceeding the fee for notarial services established by statute. West Virginia Code § 29C-4-301 provides that the maximum fee for the notarial services provided by Schriml was two dollars per signature. The complaint alleges that Schriml was an employee and agent for Magnum and Belmont and in that capacity negotiated, prepared and executed oil and gas leases. JA 90, 91. In furtherance of his employment and/or agency relationship with Magnum and Belmont, Schriml qualified as a commissioner under West Virginia law thereby

empowering him to acknowledge documents of title. JA 90-92 The complaint alleges that Schriml thereafter falsified the acknowledgments of Appellants' signatures on oil and gas leases. JA 91, 92.

Given these factual averments, and drawing on judicial experience and common sense, the complaint plainly states a claim plausible on its face regarding the critical element in Appellants' claim seeking to void the leases; namely that Schriml received value in excess the fees prescribed for notarial services in exchange for his improper acknowledgment of the leases, thereby adequately pleading that Schriml had a disqualifying interest per *Galloway, supra*. For the foregoing reasons, the District Court erred in dismissing Count II of Appellants' complaint.

## C. THE DISTRICT COURT ERRED IN DISMISSING APPELLANTS' STATUTORY CAUSE OF ACTION FOR NOTARIAL MISCONDUCT.

Count III of Appellants' Complaint asserts a claim pursuant to West Virginia Code § 29C-6-101 *et seq.* resulting from notarial misconduct. As with Appellants slander of title claim, the District Court concluding that Count III was time-barred and further that Appellants suffered no injury as a result of Schriml's notorial misconduct. JA 483-84.

West Virginia Code § 29C-6-101, *et seq*. creates a cause of action for damages caused by misconduct by a notary. Section 29C-6-101 provides "[a] notary public is

liable to the persons involved for all damages proximately caused by the notary's official misconduct." Section 29C-6-201 provides:

> The term "official misconduct" means the wrongful exercise of a power or the wrongful performance of a duty. The term "wrongful" as used in the definition of official misconduct means unauthorized, unlawful, abusive, negligent, reckless or injurious.

Section 29C-6-103 defines causation sufficient to permit recovery of damages for notarial and provides '[i]t is not essential to a recovery of damages that a notary's official misconduct be the only proximate cause of the damages.' Section 29C-6-102 provides that the employers of a notary are vicariously liable for damages caused by notarial misconduct. Section 29C-6-102 states:

> The employer of a notary public is also liable to the persons involved for all damages proximately caused by the notary's official misconduct, if:
>
> (a) The notary public was acting within the scope of his employment at the time he engaged in the official misconduct; and
>
> (b) The employer consented to the notary public's official misconduct.

No statute of limitations is prescribed in the legislation that created the foregoing cause of action. As with Appellants' slander of title claim, the District Court concluded that West Virginia's two-year "catchall" statute of limitations contained in West Virginia Code § 55-2-12 applied to this statutory cause of     action and that the statute of limitations began to run upon the recording of the improperly

acknowledged leases. JA 497.[3]  As with Appellants' slander of title claim, the District Court failed to recognize that improperly acknowledged documents of title do not provide constructive notice under West Virginia law and failed to apply the *Dunn* statute of limitations analysis. As such, the District Court's erred in concluding that Appellants statutory notorial misconduct claim was time-barred.

Regarding the District Court's conclusion that Appellants' suffered no harm as a result of Schriml's notorial misconduct, as with Appellants" slander of title claim, at a minimum, the harm suffered by Appellants as a result of the recordation of improperly acknowledged leases include attorney fees incurred by Appellants to have the leases expunged from the county land records. *TXO, supra,* 419 S.E.2d at 81. The District Court thus erred in concluding that Count III of the Complaint failed to state a claim for slander of title upon which relief can be granted.

**V.    The District Court Erred When it Granted Magnum's and Belmont's Motions for Summary Judgment on Plaintiffs' Claims of Fraud in the Inducement as there was Sufficient Evidence in the Record to Establish a Genuine Issue of Fact for a Jury to Determine Whether the Elements of the Claim were Proven and Whether the Claims were Timely Filed.**

The elements of a fraud in the inducement claim are:

---

[3] WV Code § 55-2-12 provides that: Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

That the act claimed to be fraudulent was the act of the Defendant or induced by him; (2) that it was material and false; that Plaintiffs relied upon it and were justified, under the circumstances, in relying upon it; and, (3) that the Plaintiff was damaged because he relied upon it. *Lengyel v. Lint*, 167 W.Va. 272, 276-277, 280 S.E.2d 66, 69 (1981) and *Kidd v. Mull,* 215 W.Va. 151, 253, 595 S.E.2d 308, 310 (2004).

When allegations of fraud are properly denied in the pleadings, they "must be established by clear and convincing proof." Sly. Pt. 5, *Calhoun County Bank v. Ellison,* 133 W.Va. 9, 54 S.E. 2d 182 (1949). Likewise, "[f]raud cannot be predicated on a promise not performed. To make it available there must be a false assertion in regard to some existing matter by which a party is induced to part with his money or his property." *Crosten v. Emax Oil Co.,* 195 W.Va. 86, 464 S.E.2d 728 (1995) Syl. Pt. 3, citing Syl. Pt. 1, *Love v. Teter,* 24 W.Va. 741 (1884). In this case, that "existing matter" is obviously threat that the gas that exists beneath the surface of plaintiffs' land would be taken if many of the plaintiffs did not sign leases.

As a preliminary matter, plaintiffs agree with the District Court's conclusion that the "false statement" requirement of a fraud in the inducement claim has been satisfied. However, plaintiffs take issue with the District Court's conclusion that "only ten of the 129 plaintiffs" satisfy this element. JA 1,298. The District Court appears to exclude any plaintiff who did not more articulately claim that the extraction of gas threatened by the landmen was by "a deviated well under and through their land." JA 1,298.

Plaintiffs' claim of fraud is that the landmen told plaintiffs that if they did not execute the proffered lease, the defendants would be able to extract their gas from under their land and plaintiffs would receive no compensation therefrom. JA 60.

The District Court very narrowly construed the allegations to satisfy extraction by deviated well in limiting the number of plaintiffs who satisfied the "false statement" element to 10. The District Court found that only plaintiffs Catherine Durr and Mark Carr, Allen and Donna Goff, William and Lynn Sargent, were part of the 10, as were John W. Shaffer, David Friend, Junior Bolyard and David Murray because they adequately described what the District Court deemed to be the threat of extraction by deviated well if they did not sign a lease. JA 1,298-1,299.

Many more plaintiffs, whether by their deposition testimony[4] that the landmen said their gas could be taken or by their interrogatory answers[5] have clearly satisfied this "false statement" element. Attached to plaintiffs' memorandum opposing summary judgment are written discovery responses where approximately 60 plaintiffs described how the landmen misrepresented that they could take the plaintiffs' gas if

---

[4] Gordon Cathell JA 1520-1521; Morrel Bolyard, JA 1,533; Gary Bowman JA 1,541; Carol Castle, JA 1,549-1,550; Gary Henline, JA 1,554-1,555; Charles Bennett, JA 1,563, 1,567; Judy Bennett, JA 1,573; Jim Noce, JA 1,577; Gary Connor, JA 1,585; Brad Castle, JA 1,597; Patsie Bolyard, JA 1,618, 1,620; Dorsey Bolyard, JA 1,664-1,665, 1,674; Charles Bell, JA 1,679; Richard Bell, JA 1,692-1,693

[5] The District Court pointed out in Footnote No. 8 of its Memorandum Order (JA 1,299) that the discovery responses relied upon by plaintiffs appeared unverified; however, the verifications were just not made a part of the exhibit (JA 1,431-1,514).

39

they didn't sign a lease. JA 1,431-1,514.  For example, Doris Bell said, "They told me if I didn't sign, the gas would be taken out from under me through my neighbor's property." JA 1,434-1,435. Orpha Bolyard claims almost the identical statement was made, as did Donald and Wanda Colebank. JA 1,442, 1,452. Gary and Karen Conner claimed to be told "the gas would be taken out from under us through our neighbor's property." JA 1,451. Many other plaintiffs claim the landmen made similar allegations that their gas could be taken, or taken from under their property, or could be drained, or could be taken through their neighbor's property. JA 1,432, 1,437-1,438, 1,444, 1,446, 1,450, 1,452, 1,462, 1,464, 1,466, 1,468, 1,470, 1,474, 1,476, 1,481, 1,483, 1,485, 1,489, 1,496, 1,500, 1,502, 1,504, 1,506, 1,508, 1,511, 1,514.

The District Court apparently viewed these allegations as insufficient, despite their similarity to the allegations of the "10 of 129" the District Court found satisfactory. Plaintiffs believe that, in light of *Stone v. Chesapeake Appalachia, LLC,* No. 5:12 CV102, 2013, WL 2097397, any taking of gas below another's property without their permission is illegal, and any statement that the same can be done, by any method of hydraulic fracturing beneath the property of another, is false.  Judge Bailey appeared to address the very allegations of many plaintiffs when he concluded that *Coastal Oil and Gas Corp. v. Garza Energy Trust,* 268 S.W.3d (Tex. 2008), or *Garza,* "gives oil and gas operators a blank check to steal from the small landowners. Under such a rule, the companies may tell a small landowner that either they sign a

40

lease on the company's terms or the company will just hydraulically fracture under the property and take the oil and gas without compensation." This result is what so many of the plaintiffs feared when they signed leases for little compensation. Judge Bailey very clearly rejected *Garza* in concluding that "this Court simply cannot believe that our West Virginia Supreme Court would permit such a result."

Notwithstanding the above, the District Court opined that the evidence supported only four of the ten plaintiffs as to the reliance element, but concluded that "none of the plaintiffs was justified in signing a lease with Magnum based on the alleged statement concerning the lawfulness of deviated wells." JA 1,300-1,301. The District Court opined that it was "unreasonable to believe that the law would permit gas companies to drill into anyone's land and take that person's gas without his or her permission" and "it is even more unreasonable to believe that gas companies would spend money on leases unnecessarily." [6] JA 1,301. The District

---

6 Judge Bailey, in Stone, appeared to be concerned with this very occurrence, when he held that Garza, 268 S.W.3d 1 (Tex. 2008), "gives oil and gas operators a blank check to steal from the small landowner. Under such a rule, the companies may tell a small landowner that either they sign a lease on the company's terms or the company will just hydraulically fracture under the property and take the oil and gas without compensation." Stone appears to plaintiffs to be relevant to any type of fracking which results in the taking of another's gas, including what plaintiffs feared. The District Court appeared to distinguish Stone from the present case based upon a restrictive definition of "deviated well," when any well that uses controlled angles to reach an objective location other than directly below the surface location is deviated. Stone does not appear to plaintiffs to distinguish between gas extraction techniques as long as it involved fracking and the taking of the gas under another's property.

Court further held that "no reasonable person would accept such a representation as true and sign the lease without first looking into the validity of the statement or consulting someone knowledgeable in the oil and gas field." *Id.*

Yet, that's exactly what plaintiffs claim to be the case. That not one of the plaintiffs (recall that over 70 leases were signed) who signed leases brought some sort of legal challenge regarding the misrepresentation, <u>before this instant action was filed</u>, should more accurately reflect what was "reasonable" to Preston County residents than what the District Court concluded. The District Court specifically called into question why a gas company would ever spend money on leases if they could take the gas. Plaintiffs can articulate a number or reasons why they would do so, including: 1) in the hope that they could minimize future legal battles over such rights; 2) to lock in the minimum required royalty rate of 12½% (as most of the subject leases provided) so no argument could be made later that a higher royalty rate, then applicable, should be paid, potentially saving the gas company millions of dollars; 3) to obtain surface access to some land in order to drill, so leasing land at these minimal amounts was clearly in the gas company's best interest; 4) to foreclose other interested gas companies from obtaining leases or from trying to drill the same land at a minimal cost; and, 5) so they could flip them for millions of dollars, like Belmont did, while paying landowners minimal amounts.

The District Court interposed its own judgment as to what was "reasonable" when a jury could reasonably have concluded otherwise. The District Court was required to view the evidence "in a light most favorable" to the non-moving party (plaintiffs) when ruling on defendants' motions for summary judgment. See, for example, *Stemp Square Assoc., L.L.C. v. G.D.F., Inc.,* 211 F. 3d 846, 850 (4th Cir. 2000). Plaintiffs contend that the deposition testimony of the various plaintiffs and the discovery responses submitted, represented sufficient evidence, when viewed favorably to the plaintiffs, from which a rational trier of the facts could reasonably find for the non-moving party, as is the standard for overcoming such a motion. See, for example, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).

The District Court appears to be holding the citizens of Preston County to a reasonably high level of knowledge in an area of the law that is still emerging particularly concerning the rule of capture when it deemed plaintiffs "unreasonable" for "relying on such a blatant misrepresentation of the law…" and accepting "such a representation as true…" JA 1,301. Plaintiffs argue the better decision, and that which is supported by the evidence and the law, was for the District Court to allow the determination of what was <u>reasonable</u> with respect to the plaintiffs' reliance on the misrepresentations when signing leases to be decided by a jury.

A number of West Virginia and Federal Court cases have addressed <u>who</u> determines "what is reasonable" under various circumstances. For example, in

*Arnold v. Potomac Improvement Co.,* 190 S.E. 685, 686 (1937), when considering whether the plaintiff acted reasonably in presenting for payment a demand note, the West Virginia Supreme Court of Appeals determined that "what is a reasonable time in a given case" is a determination "for the jury or for the court where it acts without a jury."

As well, in *Niemi v. NHK Spring Co.,* 543 F.3d 294, (2008), the Sixth Circuit Court of Appeals considered what were reasonable steps for a company to maintain the secrecy of protected trade secrets, and determined "what is reasonable for a small company may be different from what is reasonable for a large company; and that determination ordinarily represents <u>a question for the jury</u>." Citing *Learning Curve Toys, Inc., v. Playwood Toys, Inc*. 342 F. 3d 714, 724-25, (7th Cir. 2003). (Emphasis added).

The Seventh Circuit in *Biomet Orthopedics, Inc. v. Tact Medical Instruments, Inc.,* 454 F. 3d 653, 655 (2006), found similarly regarding "what is reasonable" for contracting for the transportation of goods pursuant to the Uniform Commercial Code, when it held that "what is 'reasonable' is a classic jury question."

In the case of *U.S. v. Harless,* 76 F.2d 317, 319 (C.A. 4 1935), the plaintiff sought to recover under a total and permanent disability clause contained in a war risk insurance policy. A jury awarded the plaintiff over $10,000 which the defendant (the U.S. Government) appealed. As to the jury's finding that the plaintiff was

44

disabled, the Court made it clear regarding the trial court's instruction to the jury that:

> The question is whether the pain and suffering are of such character as (considered reasonably) to disable insured from following with reasonable regularity any substantially gainful occupation; and what is reasonable under such circumstances is a question for the jury, unless the evidence is so clearly one way that reasonable men could not differ as to what the facts are. (Emphasis added).

The District Court removed the issue of "reasonableness" on the "justified reliance" element of fraud in the inducement from the jury's consideration based upon the Court's own determination of reasonableness, even though the evidence was not so one-sided at all. When considering motions for summary judgment, a District Court's function is "not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson* 477 U.S. at 249. More applicable to the District Court's conclusions of "what is reasonable," such a determination, insofar as it should be based on "credibility determinations" as to what was reasonable, "weighing of the evidence" as to what was reasonable, and the "drawing of legitimate inferences from the facts" as to what was reasonable, are "jury functions, not those of a judge." Id. The plaintiffs urge this Court to consider it more appropriate that a jury comprised of residents in the Northern District of West Virginia (particularly residents of North-Central West Virginia) should properly assess whether the representations of the landmen were reasonably relied upon by plaintiffs and justified plaintiffs in signing the leases in

45

question.  There is certainly prima facie evidence of record to conclude that a reasonable jury could return a verdict for plaintiffs by clear and convincing evidence on their fraud in the inducement claim.

The District Court concluded that "[e]ven if the plaintiffs could establish the prima facie elements of their claim for fraud in the inducement, the claim is time-barred." JA 1,301.  However, the statute of limitations for a fraud claim is also a question of fact to be decided by a jury, pursuant to well-established West Virginia law,

> Where a cause of action is based on tort or on a claim of fraud, the statute of limitations does not begin to run until the injured person knows, or by the exercise of reasonable diligence should know, of the nature of his injury, and determining that point is a question of fact to be answered by the jury."

Syl. Pt. 3, *Stemple v. Dobson,* 184 W.Va. 317, 400 S.E. 2d 561 (1990).

The above rule of law has been referred to as the "discovery rule" and in West Virginia is "generally applicable to all torts, unless there is a clear statutory prohibition to its application."  Syl. Pt. 2 *Dunn v. Rockwell*, 225 W.Va. 43, 689 SE. 2d 255 (2009).  *Dunn v. Rockwell* further states that, under the discovery rule,

> The plaintiff is charged with knowledge of the factual, rather than the legal, basis for the action.  This objective test focuses upon whether a reasonable prudent person would have known, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action.

225 W.Va. at 53, 689 S.E. 2d at 265.

46

The District Court found that the plaintiffs did not satisfy this objective test, concluding that plaintiffs' "not inquiring as to the truthfulness of the alleged misrepresentations before signing the leases" reflects a lack of any diligence at all. JA 1,302. The District Court further looked disapprovingly at the failure of the plaintiffs to consult "with someone regarding the landmen's alleged statements soon after signing" when arriving at its decision that plaintiffs' claims for fraudulent inducement were time-barred. The District Court's criticism of the plaintiffs is that they "imply that their claim was timely for an indefinite period, so long as fortuity did not trigger the two year clock." JA 1,302-1,303.

This Court is reminded, however, that the leases in question had initial terms of five (5) years, with renewal for another five (5) years upon payment of a delayed rental payment (in 2012 and 2013). JA 452, 500-501. The delayed rental payments, in fact, were sent to the plaintiffs, but most returned them, as it was around this time that plaintiffs first met with present counsel.  There is no evidence in the record that during the primary term (first five years) of the leases, that anything significant would have occurred prompting the plaintiffs to make inquiry as to the truthfulness of the landmen's statements.  No lawsuits were reportedly filed, there was little or no drilling activity, and very little drilling infrastructure was in place, to compel the plaintiffs to question the statements of the landmen.

The defendants pointed out in their memoranda in support of their motions, that there were various newspaper articles that put plaintiffs on notice such that further inquiry of their leases became necessary.  However, of the 30 plaintiffs deposed, only five of them acknowledged reading newspaper articles related to oil and gas lease issues in the Preston County area.  JA 1,043. The articles referenced in defendants' submissions to the District Court neither contain sufficient detail of landowners' misrepresentations nor the unlawful nature of those statements, to put the few plaintiffs who read the articles on reasonable notice to make further inquiry. JA 728-732.

The defendants further claim, to which the District Court made reference in Footnote 13 of its Memorandum Order, that some of the plaintiffs met with an attorney (not present counsel). JA 1,289-1,290, 1,303.  Yet, there is no evidence in the record identifying all of which plaintiffs met with an attorney, the content of any of their communications, and particularly what information was conveyed to those plaintiffs by the attorney.  Plaintiffs are further alleged to have been given additional notice of their claims by virtue of a public meeting conducted in Kingwood (Preston County) on August 21, 2008.  Again, while there is evidence that some plaintiffs attended this meeting, there is little evidence as to what any attendee at said meeting was told to put them on notice that they might have a claim of fraud in the inducement.

As well, during the depositions of the plaintiffs, few, if any, were asked by counsel for the defendants when they realized the defendants could not take their gas if they didn't sign a lease (versus when they thought they got a bad deal). Neither did the District Court make such a determination, as no hearings were conducted where any plaintiffs testified regarding when they became aware that the landmen misrepresented the rule of capture. Notwithstanding, a sampling of Affidavits was submitted as part of plaintiffs' brief opposing the defendants' Motions indicating that the several plaintiffs were first advised of the proper rule of capture when meeting with present counsel in early 2012. JA 1,705-1,709. Not coincidentally, the underlying civil action was filed by present counsel in the Preston County Circuit Court in November of 2012. Surely this is evidence of when many of the plaintiffs first reasonably knew of their claim of fraud in the inducement. The District Court concluded that the facts were undisputed in this regard allowing the District Court to decide the statute of limitations defense pursuant to *Childers Oil Co. v. Exxon Corp.,* 960 F.2d, 1265, (4th Cir. 1992), and appears to simply conclude that by two (2) years before the filing of this action "plaintiffs should have known about their claim for fraud in the inducement" without more specifically determining when that claim accrued. JA 1,269.

At the very least, this evidence is conflicting, and certainly subject to different conclusions as to when the plaintiffs knew, or by the exercise of reasonable diligence

should know, that they might have a cause of action based on the statements of the landmen. Thus, the timeliness of the plaintiffs' claims should have been decided by a jury as the prevailing case law directs not the District Court.

## CONCLUSION

For the reasons set forth above, this matter should be remanded to the Preston County Circuit Court for further proceedings consistent with this Court's findings. Alternatively, should this Court find that remanding this matter to the Preston County Circuit Court not be warranted, this Court should reverse the District Court's Order Granting Summary Judgment, and remand the case back to the District Court for trial.

## REQUEST FOR ORAL ARGUMENT

Because of the complex nature of the issues surrounding hydraulic fracturing and the oil and gas leases, appellant moves pursuant to F.R.A.P. Rule 34(a) that this matter be set for oral argument. This case meets the standards in Rule 34(a)(2) for oral argument, in that (a) this appeal is not frivolous, (b) the dispositive issues raised in this appeal have not been recently and authoritatively decided, and (c) the decisional process would be significantly aided by oral argument.

/s/ Jeffrey J. Rokisky
Jeffrey J. Rokisky
ROKISKY AND ASSOCIATES
3200 Main Street
Weirton, WV 26062
(304) 748-3200

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>
**Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements**

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    this brief contains <u>13,303</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    this brief has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.


February 18, 2015                                    /s/ Jeffrey J. Rokisky
                                                     Jeffrey J. Rokisky

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on February 18, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Amy M. Smith, Esq.
Steptoe & Johnson, PLLC
400 White Oaks Blvd.
Bridgeport, WV 26330

Richard D. Owen, Esq.
Goodwin & Goodwin, LLP
300 Summers Street, Suite 1500
Charleston, WV 25301-1678

*Counsel for Appellees*

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ Melissa A. Dockery
Melissa A. Dockery
GIBSON MOORE APPELLATE SERVICES, LLC
421 East Franklin Street, Suite 230
Richmond, VA 23219